Honorable Oscar William Loyd, II Criminal District Attorney P.O. Box 216 Gilmer, Texas 75644
Re: Certification of a petition and financing of a local option election under the Alcoholic Beverage Code (RQ-1865)
Dear Mr. Loyd:
You ask two questions about local option liquor elections. Your first question concerns the interpretation of section 251.10 of the Alcoholic Beverage Code (the code). That section prescribes the requirements for counting signatures on a petition requesting a local option liquor election. Subsection (b) of that section provides:
 (b) No signature may be counted, either by the registrar or commissioners court, where there is reason to believe that:
 (1) it is not the actual signature of the purported signer;
 (2) the voter registration certificate number is not correct;
 (3) the voter registration certificate number is not in the actual handwriting of the signer;
 (4) it is a duplication either of a name or of handwriting used in any other signature on the petition;
 (5) the residence address of the signer is not correct or is not in the actual handwriting of the signer; or
 (6) the name of the voter is not signed exactly as it appears on the official copy of the current list of registered voters for the voting year in which the petition is issued. (Emphasis added.)
Specifically, you ask whether the language underlined above requires that each entry that appears to violate subsection (b)(4) is to be disregarded in determining the sufficiency of the petition signatures or whether the first entry in a questionable series may be counted as a valid signature. You offer the example of a voter who signs his name on a petition more than once, and ask whether the first entry is a "duplication."
In an earlier opinion of this office, the provisions of section 251.10(b)(6) were determined to be unambiguous and mandatory. Attorney General Opinion JM-501 (1986). The registrar of voters has no authority to waive the signature requirements of that subsection. Id. By its terms, subsection (b) states that "no signature may be counted" under certain circumstances. We do not believe that the language prohibiting duplicative names or handwriting can reasonably be construed to allow the counting of the "original" or first name in a series and to disallow the subsequent entries. The plain meaning of subsection (b)(4) is that each name that appears more than once and each name that appears to be written in the same handwriting is void. Several definitions that support our reading of subsection (b)(4) are found in Webster's Ninth New Collegiate Dictionary, which defines "duplicate" as:
 being the same as another . . . either of two things exactly alike and [usually] produced at the same time or by the same process . . . one that resembles or corresponds to another.
Thus, it is our opinion that all of the signatures or names in a series that appear to violate subsection (b)(4) are to be disregarded in verifying a petition regardless of the order in which they may appear on the petition.
Your second question relates to the payment of expenses in an election held pursuant to the code. Section 251.40 provides that county expense is limited to the holding of only certain local option liquor elections per year. It also authorizes the county to obtain reimbursement for election costs in cities or towns within the county.
Section 251.41 requires a deposit before the issuance of a petition for elections when the county is not required to pay the expenses under section 251.40. In its entirety, section 251.40 provides:
 (a) Subject to the limitations set forth in Subsections (b) and (c) of this section, the county shall pay the expense of holding a local option election authorized by this code in the county, justice precinct, or incorporated city or town in that county, provided, however, that if an election is to be held only within the corporate limits of a city or town located wholly within the county and not elsewhere, the county may require the incorporated city or town to reimburse the county for all or part of the expenses of holding the local option election.
 (b) County expense is limited to the holding of one election in each of the political subdivisions in Subsection (a) of this section in a one-year period where the intent of the election is to legalize the sale of alcoholic beverages. County expense is limited to the holding of one election in each of the political subdivisions in Subsection (a) of this section in a one-year period where the intent of the election is to prohibit the sale of alcoholic beverages.
 (c) All other local option elections shall be paid by the county from funds derived by the county as prescribed in Section 251.41 of this code.
Section 251.41 provides:
 (a) If under Section 251.40 of this code the county is not required to pay the cost of the election, the county clerk shall require a deposit before the issuance of a petition for a local option election.
 (b) The deposit must be in the form of a cashier's check in the total amount of 25 cents per voter listed on the current list of registered voters residing in the county, justice precinct, or incorporated city or town where the election is to be held.
 (c) The money received shall be deposited in the county's general fund. No refund may be made to the applicants regardless of whether the petition is returned to the county clerk or the election is ordered.
 (d) The county clerk may not issue a petition to the applicants unless the deposit is made, if a deposit is required by this code.
 (e) A violation of Subsection (d) of this section is a misdemeanor punishable by a fine of not less than $200 nor more than $500, or confinement in the county jail for not more than 30 days, or both.
Specifically, you inquire about the 25 cent per voter deposit requirement prescribed by section 251.41(b). You ask what the legislative intent was in requiring the deposit and whether the county must hold an election for which the deposit is inadequate.[1]
This deposit provision was added to the statute in 1967. The documents relating to the legislation which established the deposit requirement did not reveal the logic used by the legislature in selecting the 25 cent per voter amount. Subsection (c) of that section provides that the deposit will be placed in the county's general fund; no refund is allowed whether the petition is returned or an election is held. The legislature must have envisioned the county receiving deposits, on occasion, that would not be expended in a particular election. The section does not provide for the collection of additional funds from the petitioner after the actual election expenses have been incurred. Subsection (a) of section 251.41 makes the deposit a condition precedent to the issuance of a petition, not the ordering of the election.
We think the provisions contemplate that a fund will be maintained from deposits collected and that the costs of elections for which deposits are required under section 251.41 shall be paid from that fund (except to the extent reimbursement of expenses required by the county under section 251.40(a) covers said costs). Thus, it is irrelevant under the statute if the deposit for a particular election does not cover its cost, since the statute contemplates that the costs will be paid not from that particular deposit but rather from the fund accumulated from all deposits past and future. If the fund is inadequate to pay for an election, the costs of which are required by the statute to be paid from the fund, then we think the county must wait until the fund is replenished by future deposits to recoup any county money proper which had to be spent as a consequence of the fund's depletion. Whether the applicable provisions should be amended to provide for increased deposits so that an adequate fund will be maintained is of course a matter for the legislature.
In our opinion, a county may not refuse to hold an election pursuant to sections 251.40 and 251.41 merely because the 25 cent per voter deposit required for the petition for that election may prove insufficient to cover the cost of the election.
 SUMMARY
All signatures or names in a series that appear to violate Alcoholic Beverage Code section 251.10(b)(4) are to be disregarded in verifying a petition for a local option liquor election.
A county may not refuse to hold an election pursuant to sections251.40 and 251.41 of the Alcoholic Beverage Code because the 25 cent per voter deposit is insufficient to offset the county's expenses in conducting the election.
Yours very truly,
 JIM MATTOX Attorney General of Texas
 Mary Keller First Assistant Attorney General
 Lou McCreary Executive Assistant Attorney General
 Judge Zollie Steakley Special Assistant Attorney General
 Rick Gilpin Chairman, Opinion Committee
 Prepared by Karen C. Gladney Assistant Attorney General
[1] You do not inquire about, nor do we address, any question as to the constitutionality of the 25 cent per voter deposit requirement.